**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| IVAN W. HANTMAN | : |
| DEBTOR(S) | : BANKRUPTCY NO. 12-21852 |
| IVAN W. HANTMAN | : |
| PLAINTIFF(S) | : |
| VS. | : |
| ISDANER & COMPANY, LLC ROCKSTONE CAPITAL, LLC | : |
| DEFENDANT(S) | : ADVS NO. 13-072 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Debtor has filed a complaint for the turnover of money from Isdaner & Company, LLC and for the determination of the secured status of the Proof of Claim filed by Rockstone Capital, LLC. Answers were filed by both Defendants. The parties have submitted a stipulated set of facts in lieu of trial. The Court thereafter took the matter under advisement. For the reasons which follow, judgment will be entered as set forth below.[1]

*Stipulated Facts*

The Debtor is a CPA. Joint Stipulation of Facts (JSF), ¶ 2. He is a member of the

---

[1] Because this matter involves a demand for turnover and request to determine the extent of secured status of a claim, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(E), (K).

Defendant Isdaner. *Id.*, ¶ 6. In March 2005 an entity known as I.D.R. Enterprises, Inc. (IDR) borrowed $100,000 from Bank of America, N.A. *Id.*, ¶ 12. The Debtor personally guaranteed this loan. *Id.*, ¶ 13. Bank of America subsequently assigned the loan to Defendant Rockstone. *Id.*, ¶ 14 IDR defaulted on the loan. *Id.* Rockstone sued both IDR and the Debtor in state court. *Id.* On June 28, 2011, judgment was entered in favor of Rockstone and against the Debtor in the amount of $218,552.54. *Id.*, ¶ 15. On December 21, 2011, Rockstone executed upon its judgment against the Debtor. *Id.*, ¶ 16. To that end, it caused to be filed and served upon Isdaner a writ of attachment. *Id.* In the summer of 2012 the Debtor filed a Motion to Quash the writ of attachment in state court. *Id.*, ¶ 18. He argued in that forum that the money held by Isdaner in an account in the Debtor's name (the "Capital Account") was exempt from attachment pursuant to Pennsylvania's Wage Payment and Collection Law, 42 P.S. § 8127. *Id.*, ¶ 18. On July 9, 2012, the state court denied the Motion to Quash. *Id.*, ¶ 20. The attachment remains in effect. *Id.,* ¶ 17.

      On December 31, 2012, the Debtor commenced this bankruptcy case. *Id.*, ¶ 45. Six weeks later, the Debtor filed this adversary proceeding. In it, he alleges three counts. Counts I and II are directed at Isdaner. Count I demands that Isdaner turnover the money that it was holding in the Debtor's Capital Account. Count II sought denial of Isdaner's claim for the reason that Isdaner had refused to turn over the money in the Debtor's Capital account. Count III is directed at Rockstone. It seeks a declaratory judgment that Rockstone has no lien on the funds in the Capital Account. *See generally* Complaint.

Subsequent events have mooted Counts I and II. As to Count I, Isdaner has turned over the funds in the Capital Account to the Debtor. Pursuant to court order, such funds are to be held by the Debtor in his DIP account. *Id.*, ¶ 48. Having turned over those funds, Isdaner is no longer precluded from an allowed claim as alleged in Count II.[2] Left for disposition is Count III, to which the Court now turns its attention.

*The Arguments*

Rockstone's Proof of Claim alleges secured status based on a judgment which it perfected by garnishment. *See* Proof of Claim, No. 11-2. Just as he argued in the state court, the Debtor posits once again that the funds as to which Rockstone asserts a lien are exempt from attachment because they constitute "wages." Under Pennsylvania law, the argument goes, wages are exempt from attachment. *See* 42 P.S. § 8127(a). Debtor insists that although that argument failed before the state court, the character of the funds has since changed making the situation now different. In response, Rockstone makes two points, one based on federalism and the other in preclusion. The first point is that to allow the Debtor to again raise this argument violates the *Rooker-Feldman* doctrine. The second point is that the claim is precluded under the doctrine of collateral estoppel. The Court finds the *Rooker-Feldman* argument sufficiently persuasive to dispose of this matter, however the Debtor's fallback positions would serve him no better.

*Rooker-Feldman*

The *Rooker-Feldman* doctrine bars a lower federal court from review of a state

---

[2] Section 502 disallows the claim of any creditor who has failed to turn over property of the estate. *See* 11 U.S.C. § 502(d).

3

court decision.[3] *See Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir.1998) Specifically, a claim is barred if "(1) the federal claim was actually litigated in state court prior to the filing of the federal action or (2) if the federal claim is inextricably intertwined with the state adjudication meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper,* 407 F.3d 573, 580 (3d Cir.2005). In assessing whether a claim was "actually litigated" in state court, the court must look to the substance of the claims adjudicated in the state court compared to the plaintiff's claims in the federal action. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 364 F.3d 102, 105 (3d Cir.2004), *rev'd on other grounds*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). A federal claim is "inextricably intertwined" with the state court adjudication "when ... the federal court must take an action that would negate the state court's judgment." *See Knapper*, 407 F.3d at 581. The *Rooker–Feldman* doctrine is grounded in principles of federalism and designed to serve two primary functions: It furthers the interest of finality in court decisions, and ensures that federal courts show proper respect for their state counterparts. *See Guarino v. Larsen*, 11 F.3d 1151, 1157 (3d Cir.1993). The Third Circuit has held that this doctrine applies to the decisions of lower state courts, and not just state courts of last resort. *See Exxon Mobil, supra*, 364 F.3d at 104. In bankruptcy cases, the doctrine is of limited or no application where the matter involves *substantive bankruptcy rights* or rights that *could arise only in bankruptcy. See In re Funches*, 381 B.R. 471, 484 (Bkrtcy.E.D.Pa.2008) (emphasis added)

---

[3]That doctrine derives from two Supreme Court Opinions: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486–487, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

What is before this Court is a reprise of the state court garnishment challenge. It is not disputed (1) that the issue before the state court was whether the money in the Capital Account constituted wages, and (2) that the Debtor's legal basis was the same Pennsylvania statute. This was the only issue raised in the Motion to Quash the Subpoena and the response thereto. In denying the Motion the Court stated it was based on its consideration of these two pleadings.[4] The state court denied the request to quash the garnishment without further written findings, but the basis for its ruling is nevertheless clear. In requesting that the garnishment be dissolved, the Debtor argued unsuccessfully that his compensation from Isdaner was exempt as wages. The Debtor raises the exact same argument in this forum. He also relies on the very same state statute to claim that Rockstone's lien may not attach; no Bankruptcy Code provision or rule is offered to demonstrate that a contrary ruling is warranted. For this Court to take up the issue of whether Debtor's compensation constitutes wages as defined by the Pennsylvania Wage Exemption Law would be to second-guess the ruling of the state court. Interests of federalism dictate the Court do otherwise. If, as Debtor believes, his compensation constitutes wages, then he must also believe that the state court erred. If that is the case, then Debtor should have taken an appeal from that ruling. *See Parkview Assoc's P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000) (explaining that a party's appropriate "recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court

---

[4] The parties' Stipulation of Facts recites that the Plaintiff's Motion to Quash the Writ of Attachment was based "among other things" on the wage payment law. The court, however, discerns no "other things" asserted in the Motion to Quash beyond the wage payment statute. *See* Brief in Support of Motion to Quash, "Question Presented," attached as Ex. "K" to Joint Stipulation of Facts.

under § 1257, not a separate action in federal court.")[5] [6]

*Rockstone's Interest
In the Capital Account*

Count III seeks a declaration that Rockstone has no lien or other interest in the Capital Account or Unpaid Compensation of the Debtor. Complaint, ¶ 41. The operative premise of this challenge is the Debtor's claim that the funds in the Capital Account as well as any unpaid compensation from Isdaner are exempt under Pennsylvania law. That argument has been rejected by this Court, *supra*; however, it did so on procedural grounds. To determine if the Debtor is entitled to the declaratory relief it requests, this Court must assess Rockstone's contention that its claim is secured by property of the Debtor.

The Supreme Court has explained that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 918 (1979)  Pennsylvania law defines a judgment as "a judgment, order or decree requiring the payment of money." Pa.R.C.P. 3020; 3101(a). Rockstone obtained a judgment against the Debtor, thereby making Rockstone a judgment creditor. With that judgment, it commenced execution

---

[5] Even aside from according proper respect to the state court, this Court agrees it would be precluded from hearing this discrete question. Collateral estoppel bars relitigation of an issue where: "(1) the issue sought to be precluded [is] the same as that involved in a prior action; (2) that issue [was] actually litigated; (3) it [was] determined to be a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174–75 (3d Cir.2007) There was but one issue before the state court when it denied the motion to quash; to wit, whether the Debtor's compensation constituted wages. That ruling was both essential as well as final as near as this Court can tell. Consequently, the Court is precluded from hearing the same matter.

[6] Moreover, given the evidence stipulated to by the parties, this Court would be disinclined to find that the money in the Capital Account constituted wages. The Debtor did not receive Form W-2's from Isdaner, but, rather, Form K-1 statements reflecting partnership profits. *See In re Oberdick*, 2013 WL 1289152, at *26 (Bkrtcy.W.D.Pa., March 27, 2013) (denying law partner's claim of exemption as to income from partnership as "wages" where income not reported as wages or salary on federal tax returns)

proceedings. *See* Pa.R.C.P. 3102 (judgment enforceable by writ of execution). In specific, it obtained a writ of garnishment which was served upon Isdaner as garnishee. *See* Pa.R.C.P. 3108. Service of the writ upon Isdaner attached all property of the Debtor which was in Isdaner's possession. *See* Pa R.C.P. 3111(b). It also attaches to after-acquired property. *Id.; see also Matter of J. Robert Pierson, Inc.*, 44 B.R. 556, 560-561 (E.D.Pa.1984). The Bankruptcy Code recognizes that the effect of that attachment is to create a "judicial lien." *See* 11 U.S.C. 101(36) (defining judicial lien to mean a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."); *see also In re The Salem Baptist Church of Jenkintown*, 455 B.R. 857, 865 (Bkrtcy.E.D.Pa.2011) (observing that judicial lien arises upon the service of a writ of garnishment). Accordingly, the Court finds that Rockstone holds a judicial lien as to the funds originally in Debtor's Capital Account at Isdaner.

*Extent of*
*The Lien*

In the alternative, the Debtor argues that even assuming the Court finds that Rockstone is a lienholder, the extent of its lien is less than the amount of its claim. *See* Debtor's Brief, 9-11. Rockstone disputes that contention. *See* Rockstone's Brief, 10-13. The Bankruptcy Code provides for the determination of the extent of a lien:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with

7

> any hearing on such disposition or use or on a plan affecting
> such creditor's interest.

11 U.S.C. § 506(a). Debtor maintains that the extent of the Rockstone lien is less than what is owed because after the garnishment, Isdaner unilaterally changed the nature of the funds in the Capital Account. He explains that for the calendar year 2012, Isdaner withheld his base pay ($150,000) and deposited it into the Capital Account. This caused the Capital Account to grow at a rate of $12,500 per month. The Capital Account balance thus constituted a mix of profits and base pay. This was done, says the Debtor, without authority or justification. Accordingly, he concludes Rockstone's lien should not extend beyond the "profits" portion of the Capital Account, and not to the unpaid base amount of $150,000. Debtor's Brief, 10. And as to those profits in the Capital Account, adds the Debtor, the lien should not attach to the minimum required Capital Balance of $20,000. *Id.*,11.

The Court rejects the Debtor's position at the first point. It is really just a roundabout way of revisiting the wage exemption argument. Essentially, the Debtor is asking the Court to consider the $150,000 "base pay" to be wages. He offers no authority for the proposition that his monthly draw became wages as a result of its deposit into his capital account. The Court dismisses this fact as having no legal significance for present purposes. As to the $20,000 minimum capital balance, and any dispute between the parties as to their relative priorities in those funds, the Court will address this issue at a follow-up status hearing to be scheduled via the Order accompanying this Opinion.

*Subordination*

The Court also rejects Debtor's request in its brief that this Court subordinate the Rockstone lien to any federal tax claims owed by the Debtor. This request, which was not plead in the Complaint, asserts that it would be inequitable to grant a lien on compensation senior to the Debtor's tax liabilities. *See* Debtor's Brief, 11. This Court did not grant the lien which Rockstone asserts. As discussed above, Rockstone's lien arose under state law once it executed on its judgment. Secondly, the Proofs of Claim filed by the IRS do not reflect that they were filed as secured claims. Moreover, the Court observes that the accrual of unpaid tax liabilities is due to the Debtor's protraction of this dispute with a defense unsupported by law. In other words, the injury is a self-inflicted injury.

*Summary*

Based on Count I and II having become moot, and based on the Court's denial of Debtor's demand for a declaration that Rockstone's claim is not secured, judgment will be entered in favor of the Defendant Rockstone Capital LLC and against the Debtor/Plaintiff.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>April 2, 2014</u>